**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| SOUTHERN STAR CENTRAL GAS ) <br> PIPELINE, INC, ) <br> ) <br>                       Plaintiff, ) <br> ) <br> v. ) <br> ) <br> 842 MINERAL AND LEASEHOLD ACRES OF ) <br> LAND IN ANDERSON COUNTY, KANSAS, ) <br> ROGER M. KENT, ET AL., AND UNKNOWN ) <br> OWNERS, ) <br> ) <br>                       Defendants. ) <br>                                           ) | **CIVIL ACTION** <br><br> No. 08-1313 |

**MEMORANDUM AND ORDER**

Before the court is defendant Roger Kent's motion in limine to determine date of taking and applicable law or alternatively, to permit supplementation of expert reports. (Doc. 54). The matter has been fully briefed and is ripe for decision. (Docs. 55, 59, 63). For the reasons stated herein, Kent's motion is granted in part and denied in part.

**I.    INTRODUCTION**

Plaintiff Southern Star Central Gas Pipeline, Inc. ("Southern Star") is a "natural-gas company"[1] under the Natural Gas Act of 1938 ("NGA"), 15 U.S.C. §§ 717-717w (1988). On October 16, 2008, Southern Star filed an action to enforce the Federal Energy Regulatory Commission ("FERC") certificates pursuant to § 7(h) of the NGA, 15 U.S.C. § 717f(h). The court granted the certificates authorizing

---

[1]"'Natural-gas company' means a[n] [individual or corporation] engaged in the transportation of natural gas in interstate commerce, or the sale in interstate commerce of such gas for resale." 15 U.S.C. § 717a(6).

condemnation on May 27, 2009.  (Doc. 36).

Kent filed a motion in limine to determine the date of taking and applicable law.  The court wrote the parties a letter dated February 2, 2010, requesting more information regarding the deposit paid into the court by Southern Star on October 17, 2008.  (Doc. 73).  Both parties responded to the court's February 2 letter.  (Docs. ).

**II.    ANALYSIS**

**1.  Applicable Law**

Kent contends that Kansas substantive law governs the date of taking and determination of just compensation.  Southern Star responds that federal law governs.

Interstate natural gas storage companies are regulated by FERC and are governed by the NGA.  The NGA authorizes the holder of a FERC certificates to acquire property rights through eminent domain when no contract or agreement can be reached between the holder and property owner.   15 U.S.C. § 717f(h).

> The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated:

Id.

Federal Rule of Civil Procedure 71.1[2] governs the practices and procedures of federal eminent domain actions.  Fed. R. Civ. P. 71.1(a); See, e.g., Kirby Forest Industries, Inc. v. United States, 467 U.S. 1, 3-4 (1984) (stating that form of a "straight-condemnation" case prescribed in 40 U.S.C. § 257 is governed by Federal Rule of

---

[2] Rule 71.1 was formally 71A.

Civil Procedure 71A). The Tenth Circuit has not specifically addressed whether Rule 71.1 supersedes the NGA's state practice and procedure provision. Other circuits addressing the issue have held that 71.1 supersedes the NGA's state practice and procedure provision. East Tennessee Natural Gas Co. v. Sage, 361 F.3d 808, 822 (4th Cir. 2004); Northern Border Pipeline Co. v. 64.111 Acres of Land in Will County, Illinois, 344 F.3d 693, 694 (7th Cir. 2003); Southern Natural Gas Co. v. Land, Cullman County, 197 F.3d 1368, 1374 (11th Cir. 1999).

Kent cites Georgia Power Co. v. Sanders, 617 F.2d 1112 (5th Cir. 1980) and Columbia Gas Transmission Corp. v. Exclusive Natural Gas Storage Easement, 962 F.2d 1192, 1198-99 (6th Cir. 1992) in support of his argument that Kansas substantive law governs. In those cases, the circuits held that state substantive law is used to determine just compensation.

The court finds that both parties' arguments are essentially correct. The court agrees with Southern Star that 71.1 supersedes the NGA's state practice and procedure provision for condemnation actions in federal court. However, Rule 71.1 is a procedural rule. The rule governs the complaint, parties, notice, triable issues, appointment of a commission, dismissal, and deposit. There is no language in 71.1 concerning just compensation. Therefore, the court agrees with Kent that Kansas substantive law governs the issue of just compensation.

The court finds Spears v. Williams Natural Gas Co., 932 F. Supp. 259, 260 (D. Kan. 1996) and Guardian Pipeline, L.L.C. v. 295.49 Acres of Land, Nos. 08-C-0028, 08-C-54, 08-C-29, 08-C-30, 2008 WL 1751358 (E.D. Wis. Apr. 11, 2008) informative. In Spears, the court noted the NGA's state practice and procedure provision and cited Columbia Gas

and Georgia Power in determining that Kansas' statutes applied in fixing interest on the condemnation award. 932 F. Supp. at 260.

Guardian Pipeline is directly on point. There, a natural gas company obtained FERC certificates and sought an order confirming its authority to condemn in federal district court. The landowners cited Columbia Gas and Georgia Power in support of their argument that state law governed the procedure. The court stated:

> In Columbia Gas, the Sixth Circuit held that "although condemnation under the Natural Gas Act is a matter of federal law, § 717f(h) incorporates the law of the state in which the condemned property is located in determining the amount of compensation due." Id. at 1199. The Court did not hold, however, that § 717f incorporates the state law governing the procedure for condemnation. Indeed, the Court explicitly noted that in that case, the district court empaneled a three-person commission pursuant to Rule 71A(h) to determine the compensation due. Id. at 1194. Instead, Columbia Gas stands for the proposition that, whatever procedure is used, it is the substantive law of the state in which the property is located that provides the measure of damages. In that case, for example, the gas company sought to acquire by eminent domain an exclusive underground natural gas storage field. The issue on appeal was whether the commission had erred in relying upon the present value of the expected future net income of the planned wells to determine the compensation due, rather than upon the difference in value of the subject property before and after the condemnation. The Court concluded that under the NGA, state law provided the standard for determining compensation.
>
> The same is true of the two other federal cases cited by the Landowners. See Georgia Power Co. v. Sanders, 617 F.2d 1112 (5th Cir. 1980) (holding that law of the state where condemned property located to be adopted as federal rule in determining measure of compensation for property condemned by licensee of FERC exercising eminent domain power in federal court under authority of Federal Power Act); Spears v. Williams Natural Gas Co., 932 F. Supp. 259, 260 (D. Kan. 1996) (holding that state statutory interest rate, rather than federal uniform interest rate, applied to condemnation award to landowner in action brought by landowner against natural gas pipeline under Natural Gas Act). Neither case supports the Landowners' argument that § 717f(h) requires that Guardian comply

>     with the procedural requirements of Wis. Stat. ch. 32, as
>     opposed to the procedure set forth in Rule 71.1.

Guardian Pipeline, 2008 WL 1751358 at 13-14.

In sum, Rule 71.1 governs the procedure, but the court will look to Kansas substantive law on the issue of just compensation.

### 2. Date of Taking

Kent moves for the court to declare October 17, 2008, the date Southern Star "deposited its good faith estimate of value at the time of filing the petition for condemnation[,]" as the date of taking. (Doc. 55 at 9). Southern Star responds that no "taking" has occurred because just compensation has yet to be determined and paid.

Southern Star's authority to condemn Kent's property is pursuant to the NGA. The NGA is silent as to determining the date of taking. Additionally, Rule 71.1 does not address the time or date property is taken for valuation purposes.

>     The Natural Gas Act, like most statutes giving
>     condemnation authority to government officials or private
>     concerns, contains no provision for quick-take or
>     immediate possession. The Act simply says that any holder
>     of a certificate of public convenience and necessity may
>     acquire property "by the exercise of eminent domain in
>     the district court." 15 U.S.C. § 717f(h). The Act further
>     provides that "the practice and procedure in any action
>     or proceeding for that purpose ... shall conform ... with
>     the practice and procedure in similar action or
>     proceeding in the courts of the State where the property
>     is situated." (Citations omitted). Courts, including the
>     district court here, agree that this state procedure
>     requirement has been superseded by Rule 71A. See N.
>     Border Pipeline Co. v. 64.111 Acres of Land, 344 F.3d 693
>     (7th Cir. 2003); S. Natural Gas Co. v. Land, Cullman
>     County, 197 F.3d 1368, 1374 (11th Cir. 1999); see also
>     Kirby, 467 U.S. at 4 n. 2, 104 S. Ct. 2187. As we have
>     said, Rule 71A does not provide procedures for allowing
>     early possession.

East Tennessee Natural Gas, 361 F.3d at 822.

In a traditional or straight condemnation case, the condemnor

-5-

files a formal condemnation complaint and just compensation is determined prior to the condemnor seizing the property. See Kirby, 467 U.S. 3-4 (explaining the sequence of events in a straight condemnation case); see generally, Humphries v. Williams Natural Gas Co., 48 F. Supp.2d 1276, 1279 (D. Kan. 1999) (citing Columbia Gas v. Exclusive Natural Gas Storage Easement, 747 F. Supp. 401, 405 (N.D. Ohio 1990)). The condemnor does not take possession until after just compensation is determined and paid. East Tennessee Natural Gas, 361 F.3d at 821. "[W]hen just compensation is determined first, '[t]he practical effect ... is to give the government an option to buy the property at the adjudicated price. If the government wishes to exercise that option, it tenders payment to the private owner, whereupon title and right to possession vest[s].'" Id. (quoting Kirby, 467 U.S. at 4).

Other courts have cited Danforth v. United States, 308 U.S. 271, 284 (1939) and stated that the date of taking in condemnation cases brought by natural gas companies under the NGA is when just compensation is determined and paid.[3] See East Tennessee Natural Gas, 361 F.3d at 821; see also, Kirby, 467 U.S. at 12-13 (interpreting date of taking under 40 U.S.C. § 257). Although those cases differ factually in that the condemnor did not deposit a good faith estimate, the court finds that the holdings are informative. As noted supra, both the NGA and Rule 71.1 do not authorize a "quick-take" or provide

---

[3] Danforth v. United States notes that "[u]nless a taking has occurred previously in actuality or by a statutory provision, which fixes the time of taking by an event such as the filing of an action, we are of the view that the taking in a condemnation suit under this statute takes place upon the payment of the money award by the condemnor." 308 U.S. at 284.

a specific date of taking.

Nor is the court persuaded by Kent's argument that a taking has already occurred because no good faith purchaser would develop the water flood project once Southern Star filed the condemnation complaint. The fact that condemnation proceedings may (or may not) reduce the value or attractiveness of a landowner's property to potential purchasers does not by itself constitute a taking. See Kirby, 467 U.S. at 15-16. Kent maintains complete control over his operations and has even placed one lease back into production. Therefore, the court finds that straight or traditional condemnation principals govern the date-of-taking.

On October 17, 2008, Southern Star deposited its good faith estimate of value. However, Southern Star did not move for a preliminary injunction requesting Kent to stop his oil productions. Nor has Southern Star sought immediate possession of Kent's interests. In addition, Southern Star contends that Kent retains title to the oil leases, which is not disputed by Kent. There is no agreement between the parties regarding Kent's oil production or permitting Kent to withdraw funds from the interest bearing account that holds Southern Star's deposit. See, e.g., Gulf Crossing Pipeline Co. LLC v. 7.50 Acres, No. 4:08CV178, 2008 WL 2774534, at *4 (E.D. Tex. July 08, 2008).

Kent postulates that Southern Star was possibly following Kansas law, K.S.A. 26-507, which requires a party who is appealing the appraiser's award to deposit the amount of the award with the district court. Once the deposit is made, title vests in the condemnor. K.S.A. 26-507 does not contain any language concerning the date of

taking.

While the court sees the similarity between Southern Star's actions and K.S.A. 26-507, the court finds that the effect of the deposit is different. Title did not pass once Southern Star made the deposit. Nor was there any appraiser's award to appeal from. Southern Star contends that it paid a deposit not pursuant to any statute, but because it had the funds near the end of its fiscal year and received approval from its board of directors to spend these funds.[4] Southern Star did not intend to acquire title or gain immediate possession of Kent's interests by making the deposit. The court credits Southern Star's explanation of its intentions and finds that its deposit had no effect on title to the six oil and gas leases that are the subject of this condemnation action.

Because Kansas law does not specify a procedure directly applicable to the manner in which compensation will be determined, the court proposes the following hybridized procedure:

1. The first day of trial will be the date of valuation. The experts' reports may be updated accordingly. Compensation will be determined by the jury.

2. The date of taking will be the date judgment is entered on the jury's verdict. Either party may appeal the <u>amount</u> of the judgment, but not the condemnation itself.

Or, the parties may agree on a date/dates.

---

[4]Southern Star stated in its letter dated February 19, 2010, that it "felt it was most prudent to deposit the funds that had been budgeted and approved by the Board for fiscal year 2008, into an interest bearing account with the court, so that those funds would be available as needed, while the condemnation case is pending."

-8-

**III. CONCLUSION**

Kent's motion in limine to determine date of taking and applicable law, or alternatively, to permit supplementation of expert reports (Doc. 54) is granted in part and denied in part for the reasons stated more fully herein.

A motion for reconsideration of this order is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

IT IS SO ORDERED.

Dated this  16th  day of March 2010, at Wichita, Kansas.

s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE